**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| JANE DOE (L.M.H.), an individual, | |
| *Plaintiff*, | |
| v. | **Civil Action No.: 1:25-cv-00530** |
| CHOICE HOTELS INTERNATIONAL SERVICES CORP., CHOICE HOTELS INTERNATIONAL, INC., AND FLORISSANT HOSPITALITY GROUP LLC, | |
| *Defendants*. | |

**DEFENDANTS CHOICE HOTELS INTERNATIONAL, INC. AND**
**CHOICE HOTELS INTERNATIONAL SERVICES CORP.'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
**OR, IN THE ALTERNATIVE, TO TRANSFER VENUE AND**
**INCORPORATED MEMORANDUM IN SUPPORT**

COME NOW, Defendants identified as Choice Hotels International, Inc. and Choice Hotels International Services Corp. (collectively "Choice"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), move to dismiss Plaintiff's Complaint ("Complaint") (ECF No. 1), with prejudice, or transfer venue pursuant to Fed. R. Civ. P. 12(b)(2-3) and 28 U.S.C. § 1406. Alternatively, Choice seeks transfer pursuant to forum non conveniens under 28 U.S.C. § 1404. In support thereof, Choice submits as follows:

## I.    INTRODUCTION

Plaintiff brings claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), against Choice, a franchisor located in Maryland, and Florissant Hospitality Group LLC ("Florissant"), an independent owner / operator of a hotel located in Missouri, at which Plaintiff alleges she was trafficked. Plaintiff makes no allegations of any connections to the State of Texas, either factually or by any Party. Instead, Plaintiff seeks to litigate

her claims in a venue completely divorced from her allegations, one with considerably less vested interest than the alleged situs of her claims, and where none of the Parties, evidence, or witnesses are located. The only basis for litigating this matter in this District would be pure forum shopping, not the judicious and efficient resolution of Plaintiff's claims.

Absent a valid connection to this District, Plaintiff attempts to use 18 U.S.C. § 2255 as the basis for this Court's jurisdiction over Choice. This Court should reject Plaintiff's claim under § 2255 as to Choice, thereby eliminating any basis for this Court's exercise of personal jurisdiction over Choice. Alternatively, Choice urges this Court to uphold due process and the efficient administration of justice, and either dismiss this action or transfer to the venue connected to Plaintiff's allegations.

## II. ISSUES PRESENTED

1. Does 18 U.S.C. § 2255 allow claims for vicarious liability?

2. Does this Court's exercise of personal jurisdiction over Defendants comport with traditional notions of fair play and substantial justice?

3. Is this Court a more convenient and effective forum than the situs of Plaintiff's allegations?

4. Has Plaintiff sufficiently pled a recoverable claim under 18 U.S.C. § 1595?

## III. LEGAL STANDARDS

To survive a motion to dismiss, a plaintiff must state a legally cognizable claim that is at least plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The well-pled allegations must "provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citation omitted).

2

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy the pleading requirements. *Iqbal*, 556 U.S. at 678. Further, "[a] document that is referenced in the complaint and is integral and central to plaintiff's claim may be considered without converting a motion for judgment on the pleadings to a motion for summary judgment." *J.G. Alcazar Holdings, LLC v. Prot. One Alarm Monitoring, Inc.*, 2016 WL 11773109, at *5 (W.D. Tex. Dec. 15, 2016) (internal quotations and citations omitted).

## IV.    ARGUMENT

Plaintiff admits that neither Choice or Florissant are Texas corporations, that she is not a resident of Texas, and that none of her allegations arose in Texas. Compl., ¶¶ 9, 12-13, 17, 28. Plaintiff openly concedes that her allegations have no connection to this forum.

Instead, Plaintiff asserts that personal jurisdiction over Choice exists by virtue of nationwide service of process she alleges is afforded under 18 U.S.C. § 2255. Compl., ¶¶ 18-19. Pursuant to that theory, she claims all Defendants are residents of the Eastern District of Texas for purposes of venue. Compl., ¶ 20. Plaintiff's theory ignores Supreme Court guidance and improperly reads a vicarious cause of action into the text of § 2255, adding language beyond that enacted by Congress. Plaintiff's § 2255 claims should be dismissed and cannot serve as the basis for this Court's personal jurisdiction over Choice. Even if Plaintiff's § 2255 claims survive, considerations of due process and of efficient judicial administration demand transfer.[1]

### A.  Section 2255 does not provide for secondary or vicarious liability.

Plaintiff's theory of jurisdiction relies upon her allegations regarding nationwide service provision of § 2255 based on the acts of Florissant, the Missouri based independent owner /

---

[1] *See, e.g.*, *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 404 (E.D. Tex. 2022) (transferring action where court lacked personal jurisdiction over litigant).

3

operator of the Missouri-located hotel at issue. That is untenable. Plaintiff does not allege Choice is criminally responsible for her trafficking, as required to sustain a claim under § 2255. Instead, Plaintiff only alleges that Choice is vicariously liable for the violations allegedly perpetrated by Florissant. Compl., ¶¶ 144-51. But § 2255 does not provide for such secondary liability, vicarious or otherwise, and thus cannot serve as a basis for personal jurisdiction over Choice.

Whether a statute provides for such a cause of action is a question of statutory construction. "When addressing issues of statutory interpretation, our first step is determining whether the statutory text is 'plain and unambiguous.'" *Seago v. O'Malley*, 91 F.4th 386, 390 (5th Cir. 2024) (citing *United States v. Kaluza*, 780 F.3d 647, 658 (5th Cir. 2015)). "If so, [courts] enforce the statute's plain meaning, unless absurd." *Id*. (citing *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013)). Such is the case here.

Section 2255 provides, in relevant part:

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action….

18 U.S.C.A. § 2255(a) (West). By its plain language, § 2255 expressly limits a private cause of action as to the <u>criminal perpetrator(s)</u> of the <u>enumerated provisions</u> (including § 1591). It does not, as Plaintiff alleges here, recognize vicarious or secondary liability, and Plaintiff fails to plausibly allege that Choice is otherwise liable under § 2255.

Case law confirms this result. Absent clear authorization from Congress, secondary and vicarious liability do not automatically apply to statutorily created causes of action. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 171-91 (1994) (rejecting

4

secondary civil liability where not expressly authorized within the statutory text); *United States ex rel. Wright v. AGIP Petroleum* Co., No. 5:03-CV-264(DF), 2007 WL 9759051, at *7 (E.D. Tex. Jan. 3, 2007) (expressing doubt, on the basis of *Central Bank*, that a "common law cause of action may be properly based on a federal statutory scheme"). While the Supreme Court has been willing to consider vicarious liability in the context of civil rights statutes, it has not done so where the underlying conduct is an alleged crime, precisely because aiding and abetting is the appropriate form of liability, not vicarious liability. *See Meyer v. Holley*, 537 U.S. 280, 287 (2003); *compare with Central Bank,* 511 U.S. at 171-91; *see also Twitter, Inc. v. Taamneh*, 598 U.S. 471, 488, 143 S. Ct. 1206, 1220, 215 L. Ed. 2d 444 (2023) ("Importantly, the concept of 'helping' in the commission of a crime—or a tort—has never been boundless. That is because, if it were, aiding-and-abetting liability could sweep in innocent bystanders as well as those who gave only tangential assistance."). The notion that a plaintiff can hold a principal *vicariously* liable—that is, not based on the principal's own conduct, but because of their relation to an agent—for a *criminal* violation contravenes the mens rea requirements applicable to same.

*Central Bank* rejected the existence of secondary liability under § 10(b) of the Securities Exchange Act, after banks failed to raise the alarm of Enron's impending collapse. The *Central Bank* Court found that, because the financial institutions' conduct did not constitute a "manipulative or deceptive" (i.e. intentional) practice proscribed by Congress, they could not be held liable under the statute. 511 U.S. at 167. The Supreme Court's detailed analysis addressed the statutory origins and lower courts' treatment of secondary liability, but explicitly premised the lack of secondary liability in "the text of the statute." *Id.* at 173. *Central Bank* held that "the statutory text controls the definition of conduct" covered by the given statute, and the lack of explicit statutory language authorizing secondary liability precludes bringing such a claim. *Id.* at 175.

Though *Central Bank* is the landmark decision in this area, it follows from a longstanding doctrine requiring courts to apply the express statutory language in determining the scope of statutorily created liability. "*Ernst & Ernst*, [an earlier case,] considered whether negligent acts could violate § 10(b)," and rejected the SEC's argument that "broad congressional purposes behind the Act" justified imposition of liability for negligent conduct. *Id.* at 173 (discussing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197 (1976)). The Supreme Court subsequently reaffirmed *Ernst & Ernst* in *Santa Fe Industries, Inc. v. William Green*, finding that the statutory language "gives no indication that Congress meant to prohibit any conduct" that is not prohibited by the statute. 430 U.S. 462, 473 (1977). Again, in *Chiarella v. United States*, 445 U.S. 222, 232 (1980), the Supreme Court rejected the notion that conduct not prohibited by statutory text can give rise to liability, even where the purported actions are nominally similar. *Id.* ("First not every instance of financial unfairness constitutes fraudulent activity under § 10(b)."). In so doing, the *Chiarella* Court refused to read into the statutory text an implied "general duty between all participants in market transactions"—the very "element required to make silence fraudulent" under the statute. *Id.* at 232-33.

Importantly, the reasoning of *Central Bank* is based on principles of statutory construction, not the specific underlying statute. *See* 511 U.S. at 171-91. "[I]t is the Supreme Court's approach to interpreting the statute, not the actual statute itself, that is significant . . . the fact that the court was interpreting a different act of Congress [] is inconsequential." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 n.1 (9th Cir. 2006). For that reasoning, it is not limited to securities law, but applies to any federal statute. *See, e.g.*, *id.* at 1007 (finding secondary liability does not exist under §§ 2702 and 2707 of the Electronic Communications Privacy Act); *see also Ass'n of Flight Attendants, et al. v. Skywest Airlines, Inc., et al.*, No. 2:23-CV-00723-DBB-DBP, 2025 WL

6

3537390, at *3 (D. Utah Dec. 9, 2025) ("Because the [Computer Fraud and Abuse Act] does not include the words 'aid' or 'abet,' or any language creating vicarious liability, it does not create any civil liability based on aiding and abetting a violator."); *Mandel v. Daskal*, No. 23-CV-7352 (RER) (VMS), 2025 WL 2452362, at *4 (E.D.N.Y. Aug. 25, 2025).

Numerous courts have rejected the notion of secondary liability under § 2255 due to the absence of any supporting language in the statute. These courts have held that civil claims are only authorized against direct, criminal participants (i.e. those with actual knowledge) in the referenced violations. *See, e.g., Mandel*, 2025 WL 2452362, at *4; *see also Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 411 (S.D.N.Y. 2023); *Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2022 WL 106733, at *14 (M.D. Tenn. Jan. 11, 2022); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 525 (S.D.N.Y. 2018); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 287 (D. Conn. 2013).

There is also no principle of statutory interpretation that could transpose constructive knowledge civil liability under 18 U.S.C. § 1595—the civil remedies provision of the TVPRA—onto § 2255 simply because both provisions allow private recovery to victims of § 1591 "violations." "The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action for the injured person." *Smalls v. Wahl*, No. 25-CV-4852, 2025 WL 3470045, at *2 n.6 (E.D. Pa. Dec. 2, 2025). It likewise does not follow that a civil claim under one federal statute, i.e. § 1595, necessarily authorizes civil suit under another, i.e. § 2255. This is particularly true where, as here, nothing in § 2255 acknowledges a constructive knowledge standard of liability or § 1595. *See also Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-CV-474, 2019 WL 3082314, at *7 (E.D. Tex. July 15, 2019) (rejecting an "implicit nexus requirement" between federal provisions where the statutory text is silent).

Rather, § 2255 exclusively references criminal statutes detailing criminal penalties for criminal conduct. None of these enumerated statutes create secondary liability, much less liability on the basis of agency applicable to companies. In fact, § 2255's reference to "inhabitants," rather than the entity-inclusive terms "resident" or "person," even further suggests that civil liability is confined to individuals, not companies. To read liability into these statutes beyond conduct actually prohibited by their text would contravene the explicit directions from the Supreme Court. *See, e.g.*, *Smalls,* 2025 WL 3470045, at *2 n.6 (noting that "the United States Supreme Court has stated that, unless specifically provided for, federal criminal statutes rarely create private rights of action" and discussing *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 377 (1958); *Cent. Bank of Denver,* 511 U.S. at 190); *see also Freeman v. TD Bank*, No. 25-1394, 2025 WL 3268455, at *2 (3d Cir. Nov. 24, 2025).

Courts that have considered similar § 2255 claims—alleged vicarious liability arising from conduct occurring in other states, and with all parties being domiciled in other states—and found the forum appropriate under nationwide service of process are inapposite to the allegations presented here,[2] and disregard Supreme Court authority. *See, e.g.*, *T.D.P. v. Choice Hotels Int'l., Inc.*, 725 F. Supp. 3d 784 (S.D. Ohio 2024); *see also Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1339 (S.D. Fla. 2012) (applying maritime law).

In *T.D.P.*, the court reasoned that the lack of limiting language on who may be sued under § 2255—i.e. silence as to appropriate litigants—compelled finding that no such limitation exists,

---

[2] *Jane Doe 8*, on which *T.D.P.* partially based its reasoning, is premised on and limited to maritime law, which is an accepted departure from normal principles cautioning against recognizing secondary liability. *See Jane Doe No. 8*, 860 F. Supp. 2d at 1340 ("[A]bsent a clear statutory purpose to the contrary, this Court must presume that Congress intended to incorporate this long-standing principle of federal maritime law when enacting § 2255."); *see also Mandel*, 2025 WL 2452362, at *4.

and effectively any U.S. company or resident is subject to suit under § 2255's nationwide service of process. 725 F. Supp. 3d at 791. But the fundamental premise underlying this reasoning—that extra-textual common law principles can broaden a statute's scope of liability—takes precisely the opposite stance as that espoused in *Central Bank*. *See* 511 U.S. at 171-91; *see also Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.").

*Central Bank* rejected expanding the scope of statutorily created liability beyond the statutory text, and concomitantly affirmed that absence of clarifying language lends to *limiting* applicable scope, not expanding it. 511 U.S. at 177; *Alexander,* 532 U.S. at 292. *T.D.P.*'s contradictory holding conflicts with *Central Bank*. Moreover, as other Courts have noted, *T.D.P.* does not "discuss, or even cite to, *Central Bank*, which is the controlling authority." *Mandel,* 2025 WL 2452362, at *4. *T.D.P.'s* key logic—that textual silence constitutes congressional approval of broad remedial measures—also fails to acknowledge that even remedial federal statutes cannot supersede the plain statutory text. *See, e.g.*, *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981) (refusing to permit "additional judicial remedies" (i.e. damages) in private civil suit provisions beyond that expressly included in the statute, despite express inclusion of a private enforcement mechanism). In fact, there is no basis for resorting to congressional intent in analyzing § 2255 whatsoever. This Court should reject *T.D.P.*'s extra-textual approach in favor of Supreme Court precedent. *See Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.").

In either case, § 2255 does provide a clear intent within the statutory text to limit the scope of recovery to those responsible for the alleged wrongful conduct—the enumerated criminal

statutes. The distinct enforcement and relief provisions of § 2255 and § 1595, respectively, affirm § 2255's more limited application. *See, e.g.*, *Middlesex Cnty. Sewerage Auth.*, 453 U.S. at 14-15. Here, § 2255 speaks solely in terms of a "victim" who may bring suit, for "a violation" of the enumerated criminal statutes,[3] and "personal injury as a result of such violation." 18 U.S.C. § 2255(a). The causal link required under § 2255—"suffers personal injury *as a result of* such violation"—limits litigants to those who could be culpable under the listed *criminal* statutes—the aforementioned "violation." *Ramsbottom,* 2022 WL 106733, at *13-14 (finding that § 2255 liability only makes sense if it is limited to the actual perpetrator because "it requires a personal injury arising from the violation"); *accord Taamneh*, 598 U.S. at 499 (rejecting § 2333 liability for those who merely provide their services to the public). There is no textual basis to find that "violation"-dependent liability extends to any person conceivably liable in tort for behavior that is not a "violation" under the enumerated provisions. *See also Taamneh*, 598 U.S. at 501, n.14 (acknowledging a lack of caselaw holding companies liable for failing to block criminal use of their services, and that "when legislatures have wanted to impose a duty [to act], they have apparently done so by statute").

In keeping with *Central Bank* and its progeny, Plaintiff has failed to plausibly allege a claim under § 2255, and cannot rely on same to support this Court's personal jurisdiction over Choice.

B. **Litigating Plaintiff's claims in this Court would violate Defendants' due process rights and these principles otherwise strongly encourage transfer.**

Plaintiff's allegations concern a hotel located in Missouri, not Texas. Compl., ¶ 28. *None* of the Parties are at home in Texas for purposes of personal jurisdiction. Absent Plaintiff's legally

---

[3] Sections 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423.

deficient § 2255 vicarious liability claim, there is no basis for this Court's exercise of personal jurisdiction over Choice and no basis for venue in this forum. *See* 28 U.S.C. 1391(b) (requiring venue first where either the defendant(s) reside or where the substantive claims arose). Even if the Court were to allow vicarious claims under § 2255, Plaintiff's attempt to litigate this action in a remote forum with no connection to her claims would be unduly burdensome to the point of violating Defendants' due process rights under the Fifth Amendment to the United States Constitution.  Alternatively, it is well within this Court's power to transfer of this action to a more convenient forum—i.e., one with some actual tether to Plaintiff's claims that would serve the interests of justice and economy. *See* 28 U.S.C. § 1404(a).

> **a.   Upholding Choice's due process rights requires transfer to a proper forum.**

"To determine the constitutional limits of personal jurisdiction for federal claims, [courts in the Fifth Circuit] analyze their comportment with the due process clause of the Fifth Amendment, not the Fourteenth." *Hardy v. Scandinavian Airlines Sys.*, 117 F.4th 252, 264-65 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025). "[T]he Fifth Amendment due process test for personal jurisdiction requires the same 'minimum contacts' with the United States as the Fourteenth Amendment requires with a state." *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 235 (5th Cir. 2022). This Court's evaluation of personal jurisdiction thus "depends on whether the defendant 'has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Hardy,* 117 F.4th at 265, *cert. denied*, 145 S. Ct. 1308 (2025) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Here,[4] Choice maintains that personal jurisdiction is appropriate in the State of Missouri—where the alleged events arose and where the independent owner / operator, Florissant, is allegedly incorporated. Compl., ¶ 28; *see also* 28 U.S.C. § 1391(b)(2).[5] Plaintiff's attempt to litigate this action in a forum removed from the Parties and all witnesses and evidence, constitutes an unreasonable violation of Choice's due process rights, for which no countervailing justification exists.

In determining whether an exercise of personal jurisdiction is fair and just, courts weigh five factors:

> (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.

*Hardy,* 117 F.4th at 267, *cert. denied*, 145 S. Ct. 1308 (2025) (quoting *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 298 (5th Cir. 2020)). "The primary concern' in assessing personal jurisdiction is 'the burden on the defendant.'" *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 256 (2017) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, (1945)).

---

[4] For the purposes of this analysis only, Choice presumes that the Court has found that Plaintiff's vicarious § 2255 claim against Choice not only exists, but has been sufficiently pled. Choice likewise does not contest that it maintains sufficient contacts to satisfy personal jurisdiction somewhere in the United States.

[5] Though Choice is subject to general personal jurisdiction in its home State of Maryland, multiple District Courts in Maryland have held, in the context of similar TVPRA litigations, that Choice's franchisees (in this case, the alleged independent owner / operator, Florissant) are not subject to personal jurisdiction. *See, e.g.*, *S.E.S. v. Choice Hotels Int'l, Inc.*, No. DKC 24-3776, 2025 WL 3280238, at * (D. Md. Nov. 25, 2025) ("Here, it is highly doubtful the court could exercise personal jurisdiction over the franchisee defendant."); *A.E.W. v. Choice Hotels Int'l, Inc.*, No. No. 24-3769-TDC, 2025 WL 2468510, at *1 (D. Md. Aug. 27, 2025).

The burden on nonresident Defendants Choice and Florissant is acute, *none* of this case has any relationship to Texas and the events in question all are alleged to have taken place in Missouri at a Missouri hotel. Compl., ¶ 28. Choice is a hotel franchisor with its principal place of business in the State of Maryland.[6] Florissant, the independent owner/operator of the hotel, is a Missouri corporation. Compl., ¶¶ 17, 28. Plaintiff herself is not located in Texas, but is allegedly a resident of Colorado. Compl., ¶ 9. There is not a single thing about this case that has even a passing connection to Texas and no one, apart from perhaps Plaintiff's counsel, benefits from litigating this case in Texas.

It follows that forcing Defendants to litigate a case entirely based in Missouri from a Court in Texas will necessarily and severely inhibit their ability to properly prepare and defend against these serious allegations. All Defendants—and almost certainly any and all percipient witnesses— are located hundreds of miles from the Eastern District of Texas. Virtually all of Plaintiff's allegations refer to individuals who were—and most likely still are—in Missouri. *E.g.*, Compl., ¶ 65 (other alleged traffickers); ¶ 67 (other alleged trafficking victims); ¶ 69 (law enforcement personnel); ¶ 74(a-g) (Hotel staff themselves and any non-staff witnesses to Plaintiff's alleged "obvious signs" of trafficking); ¶ 74(i) (local education officials); ¶ 74(o) (the alleged men engaging in commercial sex at the Hotel); *see S.E.S.*, 2025 WL 3280238, at *5 ("Choice Defendants are almost certainly correct that nearly all the relevant witnesses were at least once located in Alabama [rather than Maryland]."); *C.T.K. v. Choice Hotels Int'l, Inc.*, No. DLB-24-2836, 2025 WL 2430024, at *5 (D. Md. Aug. 22, 2025) ("Though some Choice Hotels corporate witnesses are likely in Maryland, the principal witnesses are likely in Wisconsin [the site of the

---

[6] For the purposes of this analysis, Choice treats both Choice Hotels International, Inc. and Choice Hotels International Services Corp. as one in the same. However, Choice Hotels International Services Corp. played no role in Plaintiff's allegations and is improperly named.

13

hotel]. The principal witnesses are Doe, the alleged traffickers, the Appleton Comfort Suites hotel staff who interacted with the traffickers, and local law enforcement who investigated trafficking at the hotel.").

The absence of compulsory process for these witnesses will be deeply problematic for a meaningful investigation, not to mention a fair trial. While some third parties may choose to participate of their own accord, others—whether alleged traffickers or staff members accused of permitting wrongdoing—are unlikely to appear without an order from the Court. *See A.E.W.*, 2025 WL 2468510, at *12 (observing that "[s]ome [witnesses] may not be subject to subpoena for depositions or trial in Maryland depending on where they are presently located in Pennsylvania") (citing Fed. R. Civ. P. 45(c)(1)).

Nor do the challenges with investigation and litigation end with witnesses. Plaintiff's allegations turn heavily on the construction, layout, and operation of the hotel, a piece of real property located in Missouri. *E.g.*, Compl., ¶ 31 (alleging staff observed Plaintiff's "movements throughout the hotel"); ¶ 84(g) (assigning Plaintiff to specific rooms on the property); ¶ 112 (focusing on the alleged "physical space" related to Plaintiff's allegations); ¶ 37 (alleging drug use on the property). Conducting judicially-sanctioned investigations of the property and what occurred on it will be far more difficult when the location is far beyond the Court's remit. Even Plaintiff, with far more latitude in procuring her own records from foreign forums than Defendants, must follow the Rules and may also be impacted by litigating in this disconnected venue.

In contrast, there is no substantive argument in favor of Plaintiff litigating before this Court. Plaintiff herself has no apparent connection to Texas, thus mitigating against her choice of forum. *See, e.g.*, *TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 453-54 (N.D. Tex. 2017) (collecting cases). To the degree that her position is grounded in her counsel's perception of this

14

forum's desirability as a favorable "place to litigate TVPRA claims," that is not a cognizable ground for dispensing with Defendants' due process rights.

The relative interests of Missouri likewise urges this Court to reject Plaintiff's choice of forum. *See C.T. v. Red Roof Inns, Inc.*, No. 2:19-cv-5384, 2021 WL 602578, at *7 (S.D. Ohio Feb. 16, 2021). "Keeping lawsuits local for pre-trial proceedings recognizes the critical importance of localized evidence to sex trafficking cases." *In re: Hotel Industry Sex Trafficking Litigation*, MDL No. 2928, p. 4 (J.P.M.L. 2019). States and localities also have a strong policy interest with respect Plaintiff's allegations, "[t]he promotion of safety of persons and property is unquestionably at the core of the State's police power, and virtually all state and local governments." *Kelley v. Johnson*, 425 U.S. 238, 247 (1976). That power has since "expanded by including in its province questions of general welfare and regulations designed to promote not only public health, morals, and safety, but regulations to promote public convenience and general prosperity." *Women's Kansas City St. Andrew Soc. v. Kansas City, Mo.*, 58 F.2d 593, 599 (8th Cir. 1932). Subject to the principles of federalism, States' general welfare and prosperity powers include regulating local businesses serving same. *E.g.*, *Menotti v. City of Seattle*, 409 F.3d 1113, 1131-32 (9th Cir. 2005) (upholding municipal government interests in fostering local economic growth). Even assuming their interests were otherwise equal, Texas's relative interest in ending Missouri-based trafficking cannot match Missouri's own such interest.

Finally, to the degree that Plaintiff's position is that § 2255 somehow overcomes the need to establish personal jurisdiction, "[t]hat can't be right." *Leibovitch v. Islamic Rep. of Iran*, 852 F.3d 687, 689 (7th Cir. 2017). A statutory provision for nationwide service of process does not obviate Choice's and Florissant's due process rights.

        **b. Transfer to the situs of Plaintiff's allegations significantly advances party and judicial economy.**

15

In the alternative, should this Court accept Plaintiff's § 2255 allegations and find no due process violation, it remains true that Missouri is the most convenient forum for this action and transfer is warranted pursuant to forum non conveniens. *See* 28 U.S.C. § 1404(a).

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Blum v. Gen. Elec. Co.*, 547 F. Supp. 2d 717, 724 (W.D. Tex. 2008) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). "[A] forum non conveniens dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate and available alternative forum." *Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir.1983).

The private interests considered under a forum non conveniens analysis are largely coextensive with those considered pursuant to the Court's personal jurisdiction due process analysis, i.e. access and cost of obtaining and presenting evidence, access and cost of obtaining and presenting witness testimony, and access to other potential litigants. *See, e.g.*, *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1162 (5th Cir. 1987), *cert. granted, judgment vacated sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032, (1989). The relevant public interests, meanwhile, consider administrative difficulties flowing from court congestion; the local interest in having localized controversies resolved at home; the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id*. Notably, courts primarily resolve these venue issues on the basis on personal interests, and only consider public interests if necessary. *Id*.

As detailed herein, the great weight of both the private (primary) and public (secondary) interests urges transfer to the far more convenient forum—Missouri. District Courts in Missouri would enjoy absolute subpoena power for both depositions and trial, cutting in favor of transfer. *See, e.g.*, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316–17 (5th Cir. 2008). That the subject witnesses are unlikely to willingly cooperate with subpoena efforts strengthens the case for transfer. *See, e.g.*, *SQIP, LLC v. Cambria Co.*, 728 F. Supp. 3d 447, 455 (E.D. Tex. 2024). All conceivable evidence is located in Missouri, including the alleged location itself. True enough, the only conceivable interest weighing in favor of litigating in the Eastern District of Texas is Plaintiff's personal choice of forum. But that preference cannot counteract the additional time and expense that would be required to investigate and litigate this action.

Consideration of the relevant public interests, to the extent necessary, confirms that transfer or dismissal is appropriate. Administrative concerns do not resist transfer and there is no reasonable basis to argue that District Courts in Missouri are less suited for resolving the instant dispute than this Court. *See, e.g.*, *Yang Wu Int'l, Inc. v. LS & CX, LLC*, 2020 WL 6385549, at *5 (E.D. Tex. Oct. 30, 2020). Plaintiff also does not assert any Texas State law causes of action, nor are there other Texas-based proceedings that would complicate transfer. Instead, Plaintiff's allegations implicate questions of Missouri agency law, with which Missouri courts are ostensibly more familiar.

Perhaps most significantly, the State of Missouri clearly has a strong interest—if not the strongest interest—in resolving allegations like those Plaintiff asserts within its own borders. *See, e.g.*, *Defense Distrib. v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022). Unlike Texas, whose public interest is largely limited to the judiciary, Missouri's interests affect multiple layers of multiple government agencies. Considering the state and municipal governments that regulate business

activity, hospitals and health care agencies dedicated to public health, and local law enforcement tasked with safety of the populace, the alleged situs is clearly the most appropriate forum for Plaintiff's claims.

Even assuming this Court entertains Plaintiff's § 2255 vicarious claim against Choice, and finds that said litigation in this Court comports with traditional notions of fair play and substantial justice, to do so would result in needless waste of the Parties and likely the Court. Accordingly, these considerations urge transfer to a more appropriate forum—the Eastern District of Missouri.

### C.  Plaintiff's Claims Should Be Dismissed on the Merits.

Plaintiff's claims also warrant dismissal under Rule 12(b)(6). As Choice explains below, Plaintiff's claims rest on misconstructions of the TVPRA and implausible allegations.

### a.  Plaintiff Fails to Allege that Choice Knowingly "Benefited" From Knowing "Participation in a Venture" it Knew or Should Have Known Was Trafficking Her (Count II).

Plaintiff's principal claim against Choice is brought under 18 U.S.C. § 1595(a). *See* Compl., ¶¶ 138–43; 18 U.S.C. § 1595(a) (providing for liability against whoever "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value" from knowing "participation in a venture which that person knew or should have known has engaged in an act [of criminal sex trafficking]" as to the Plaintiff).

Such a "beneficiary" (or "participant") claim must plausibly allege that the defendant: "(1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA as to the [plaintiff]; and (4) the franchisors knew or should have known that the venture violated the TVPRA as to the [plaintiff]." *Jane Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021). Consistent with this burden, it is insufficient for Plaintiff to allege that Choice observed or failed to prevent Plaintiff's alleged trafficking, much less trafficking in general. *See id.* at 727 (noting that "observing something [i.e., sex trafficking] is not the same as participating in it"). As

one Court explained, "[t]he statutory text speaks in singular terms," such that alleging "knowledge or willful blindness of a general sex trafficking problem" is insufficient. *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020).

Here, Plaintiff proposes two separate and distinct ventures, neither of which meets the requirements of a § 1595 claim: First, she alleges a sex trafficking venture allegedly involving her criminal traffickers (though she fails to explain how Choice "participated" in such a venture), Compl., ¶ 141; and second, she alleges a "commercial venture" between Choice and Florissant, presumably related to the operation of the relevant hotel (though she fails to allege how this lawful venture to operate a hotel criminally trafficked her), *id.* ¶ 142. Neither venture is properly pled as to Choice. Indeed, the only connection to Choice whatsoever is that traffickers purportedly rented rooms from Florissant, and Choice tangentially benefitted from those rentals by receiving royalties from the franchisee under the terms of the contractual franchise agreement. *Compare* ¶¶ 141(a), (e) *with* 142(a), (d). Such allegations are plainly insufficient.

### b.  Plaintiff Misstates the Legal Standard for Participation in a Venture.

A participant claim must be based on knowing "participation in a venture which [the defendant] knew or should have known has engaged [in sex trafficking]." 18 U.S.C. § 1595(a). Plaintiff alleges something else. She claims that Choice "directly participated in and retained control over specific aspects of the operation of the Florissant Property related to trafficking." Compl., ¶ 91. But the TVPRA does not penalize influencing some of the conditions under which sex trafficking is more or less likely to occur, and for good reason. There are endless factors that can impact the likelihood of sex trafficking. Instead, consistent with the actual text of the statute, courts have regularly held that plaintiffs "must plead sufficient facts to plausibly allege that the

19

venture in which the franchisors participated *committed one of these crimes against them*." *Red Roof*, 21 F.4th at 725 (emphasis added). Plaintiff makes no such allegations.

Plaintiff does not advance any such allegations. At most, she focuses on Choice's limited involvement in the renting of rooms. *See* Compl., ¶ 88. But this misses the mark. In the seminal *Red Roof* decision, the Eleventh Circuit found that allegations that "the franchisors managed and 'were inextricably connected to the renting of rooms'" failed to state a TVPRA claim. *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024) (quoting *Red Roof*, 21 F.4th at 726-27). This is because, as the D.C. Circuit has explained in the analogous forced labor context, "something more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture." *Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024). And that carries particular force here, where Plaintiff does not—and cannot—allege that either she or her trafficker rented the rooms *from Choice*. *See* Compl., ¶ 74. As a result, Plaintiff is forced to allege something different and still less persuasive: that Choice somehow failed to prevent her trafficking.

### c. Plaintiff's Allegations Improperly Seek to Hold Choice Liable For a Failure to Detect and Prevent Trafficking.

Plaintiff admits, as she must, that Choice is a mere franchisor, and thus was "several steps removed from daily hotel operations." *R.C. v. Choice Hotels Int'l, Inc.*, No. 23-cv-00872, 2024 WL 1443412, at *3 (N.D. Ohio Apr. 2, 2024); *see S.C. v. Wyndham Hotels and Resorts, Inc.*, No. 1:23-cv-00871, 2024 WL 1429114, at *4 (N.D. Ohio Apr. 2, 2024) ("Although Defendants had general knowledge that sex trafficking afflicts the hotel industry, the Defendants had no contact with [plaintiff's] traffickers and received no specific notice of [plaintiff's] trafficking. Without direct contact, there can be no direct liability."); *S.C. v. Wyndham Hotels and Resorts, Inc.*, No. 1:23-cv-00871, 2024 WL 2186173, at *3 (N.D. Ohio May 15, 2024) ("[T]here can be no

20

participation in a venture unless there is some 'interaction with that venture.' [Plaintiff] did not present evidence that Defendants interacted with [her] traffickers. Nor has [plaintiff] explained how Defendants could have been part of a venture with [her] traffickers without interaction with the traffickers."); *see, e.g.*, Compl., ¶ 84 (failing to allege interactions between Choice and Plaintiff's trafficker). The franchisee was, thus, a necessary intermediary between the alleged trafficker and Choice itself: "street-level trafficker -> hotel -> hotel franchisor." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 562 (7th Cir. 2023).

Plaintiff recognizes that this gap between Choice and her trafficker is perilous to her claims, so she relies on long recitations of alleged franchise contractual provisions. *See, e.g.*, Compl., ¶¶ 88, 91. These types of allegations are wholly insufficient. First, as Plaintiff tacitly acknowledges, these are not claims of "participation"—as the statute requires—but of failing to prevent trafficking across the entire industry in general. *See* Compl., ¶ 81; *see also id.* ¶ 87 (alleging that Choice "would have prevented [Plaintiff's] trafficking"). Court after court has rejected such allegations as at odds with the plain meaning of the TVPRA. *See, e.g.*, *A.D. v. Marriott Int., Inc.,* No. 2:22-CV-645-JES-NPM, 2023 WL 2991042, at *4 (M.D. Fla. Apr. 18, 2023) ("The Complaint . . . fault[s] Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture."); *C.C. v. H.K. Grp. of Co., Inc.*, No. 1:21-CV-1345, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 2022); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *7 (N.D. Cal. July 30, 2020). Moreover, even assuming that somehow as a franchisor Choice had "seen signs of sex trafficking" and "received reviews mentioning sex work occurring at the hotel[]," "observing something is not the same as participating in it." *Red Roof*, 21 F.4th at 727.

21

Second, Plaintiff alleges that Choice's franchising policies failed to prevent and remedy a general social problem (going far beyond the hotel at issue) and, *ipso facto*, that necessarily means that Plaintiff can claim liability as a specific victim of that broader problem. But Plaintiff must "connect the dots between *her experience* as a victim of sex trafficking and *a specific defendant*." *Jane Doe (T.R.S.) v. Wyndham Hotels and Resorts,* No. 2:23-cv-01676-DAD-CSK, 2024 WL 3088722, at *7 (E.D. Cal. June 20, 2024) (emphasis added); *see also B.J. v. G6 Hosp., LLC*, No. 22-CV-03765, 2023 WL 3569979, at *4 (N.D. Cal. May 19, 2023).

The decision in *K.H.* is instructive. There, the Eleventh Circuit considered near identical allegations against an owner/operator (one step closer to the alleged trafficking than a franchisor like Choice): "(1) [the operator] knew or should have known that sex trafficking was occurring at its hotel—based on online reviews, police reports, and visible indicators—yet (2) [the operator] continued to engage in a hotel business relationship with and collect room rental revenue from [the trafficker] for approximately four years." 2024 WL 505063, at *3; *see id.* at *1 nn. 3-4. Such allegations were "inadequate" because "'observing something is not the same as participating in it.'" *Id.* at *3 (quoting *Red Roof*, 21 F.4th at 727); *see also B.M.*, 2020 WL 4368214, at *5.

### 1. Plaintiff Fails to Allege that Choice "Knew or Should Have Known" of Plaintiff's Alleged Trafficking.

Knowledge is a key element of a participant claim under the TVPRA. *See* 18 U.S.C. § 1595. A plaintiff must allege that "the defendant had constructive or actual knowledge that the [venture] violated the TVPRA *as to the plaintiff*." *Red Roof*, 21 F.4th at 719 (emphasis added). Accordingly, Plaintiff must show that Choice "'knew or should have known' about *her* trafficking." *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-CV-00871, 2024 WL 277117, at *1 (N.D. Ohio Jan. 25, 2024) (emphasis added).

Accordingly, a participant claim must be dismissed where, as here, Plaintiff fails to "allege facts showing [Choice] knew or should have known of *her trafficking*" specifically. *B.M.*, 2020 WL 4368214, at *6 (emphasis added); *see also Doe #9 v. Wyndham Hotels and Resorts*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 20, 2021) (complaint "must" allege facts "sufficient to establish that the defendant knew or should have known about the trafficking of the plaintiff in particular—not about trafficking occurring on the premises in general"); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 705 (E.D. Mich. 2020) (holding a plaintiff must plead facts showing that the "[d]efendant knew or should have known of sex trafficking *by the particular venture in which the defendant allegedly participated*").

Much of Plaintiff's Complaint is composed of snippets of news reports and reviews, mostly recounting unrelated alleged trafficking at other wholly unrelated properties, with different owners and operators. *See, e.g.*, Compl., ¶¶ 56, 64. These allegations that Choice was generally aware that trafficking exists across the hotel industry do not suffice to plead Choice's knowledge of Plaintiff's *own* alleged trafficking. *See A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1026 (D. Or. 2021) (noting that "general knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff"); *H.G.*, 489 F. Supp. 3d at 705. Tellingly, with respect to the hotel in question, Plaintiff cites a cherry-picked selection of unverified internet reviews, almost all coming years *after* Plaintiff's allegations, many of which do not even reference prostitution. *See* Compl., ¶ 64. Of course, it is equally easy to find a host of reviews from similar sites and from around the time of Plaintiff's allegations, which recommend the hotel as having "[e]xcellent service, location,

23

and price" (Jan. 2018) or being "comfortable, clean, and cozy" (Dec. 2017).[7] More fundamentally, Plaintiff never explains how her curated potpourri of long-after-the-fact reviews is supposed to show Choice's knowledge of her allegations. The obvious reason is that they do not and cannot.

To go beyond her collection of news articles and online reviews, Plaintiff provides a generalized list of so-called "red flags" that she claims are markers of trafficking activity. *See* Compl., ¶ 84. A wealth of cases have held that allegations of even more specific "red flags" do not suffice to show knowledge on the part of hotel operators, much less remote franchisors like Choice. *See, e.g.*, *Doe* (*SJC) v. ESA P Portfolio, LLC*, No. 1:24-CV-02423-JPB, 2024 WL 4808137, at *5 (N.D. Ga. Nov. 15, 2024) (rejecting allegations similar to Plaintiff's because there were "no allegations that hotel staff observed her trafficker forcefully bringing her to the hotel or abusing her in any way" or that the plaintiff "ever had visible injuries or that she ever acted nervous or afraid around hotel employees"). Indeed, even if hotel staff observed some, though not all, of the "red flags" cited by Plaintiff, *see* Compl., ¶ 84, that would be insufficient to show the requisite knowledge because, as one court explained, "[s]uch allegations, however, are equally consistent with criminal conduct other than sex trafficking, e.g., prostitution." *B.J.*, 2023 WL 3569979, at *6; *see also E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. Jan. 4, 2021); *Doe #9*, 2021 WL 1186333, at *2; *S.J.*, 473 F. Supp. 3d at 150-51. That reasoning applies here.

Even leaving this aside, there is still a further, equally fatal problem for Plaintiff: How could Choice, located hundreds of miles away in Maryland, have been aware of these highly specific "red flags"? To overcome this gap, Plaintiff relies on pure speculation offered under the guise of "information and belief" pleading; namely, that Choice conducted "surveillance of

---

7 *Quality Inn – Florissant*, Expedia Reviews, https://www.expedia.com/St-Louis-Hotels-Quality-Inn-Florissant-St-Louis.h6396.Hotel-Information?pwaDialog=reviews-property-reviews-wrapper-0 (last visited December 29, 2025).

property" and "internal investigations"; received information from law enforcement; would have received information from the franchisee on criminal activity on the properties; and monitored customer reviews and complaints. Compl., ¶¶ 71-72.

These allegations are implausible. Her reliance on "information and belief" pleading indicates that her allegations are "tenuous at best." *Raub v. Bowen*, 960 F. Supp. 2d 602, 615 (E.D. Va. 2013). The use of "information and belief" "as a pleading device survives a motion to dismiss only where the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Trump v. Stone*, 400 F. Supp. 3d 317, 341 (D. Md. 2019) (internal citation and internal quotation marks omitted).

Plaintiff's "information and belief" allegations are not "based on factual information that makes the inference of culpability plausible." *Id.* (internal citation and internal quotation marks omitted). Even if one assumes that Choice *did* have the resources described by Plaintiff, that would still not make out a TVPRA claim, as the observed activity is equally consistent with non-trafficking activity. *See K.B. v. G6 Hospitality, LLC*, No. 1:23-CV-2597, 2024 WL 4701891, at *3 (N.D. Ga. Nov. 5, 2024) (explaining that receipt of "real-time guest and property data," and "inferring that such data included [plaintiff's] data individually (as opposed to metadata)," would be "insufficient" as "it would not show actual or constructive knowledge that 'means of force, threats of force, fraud, coercion' or any combination thereof were used to cause [plaintiff] to engage in any commercial sex acts") (quoting 18 U.S.C. § 1591(a); *A.B. v. Shilo Inn, Salem, LLC*, No. 3:23-cv-00388-IM, 2023 WL 5237714, at *5-*6 (D. Or. Aug. 15, 2023).

### 2. Plaintiff Fails to Plausibly Plead Choice's Knowing Participation in a Cognizable "Venture."

Plaintiff's participation claim also fails because she does not properly allege Choice's knowing participation in a § 1595(a) "venture." Plaintiff first claims some kind of "continued

association" between Choice and her trafficker based on the alleged rentals of a hotel room to that trafficker. *See* Compl., ¶ 90. But Plaintiff does not plead any direct links between Choice and herself or those unidentified alleged criminal traffickers; rather, her and her traffickers' interactions were with Florissant's employees alone. *See id.* ¶ 74. While Plaintiff claims that Choice "participated in and retained day-to-day control over renting rooms" at the hotel, *id.* ¶ 91, she merely references general brand standards akin to those required by the Lanham Act, *see id.*, failing to identify who was present at "check in" when rooms were rented, *id.* ¶ 74(a).

Plaintiff does not identify any link between Choice and her trafficker, either in the form of renting rooms, taking payment, or receiving information. Choice and the alleged trafficker were never plausibly "associated in fact," 18 U.S.C. § 1591(e)(6), or in a "business enterprise involving some risk in expectation of gain," *Apple*, 96 F.4th at 414-15. Allegations like Plaintiff's "may suggest that the franchisors financially benefitted from renting hotel rooms to the [plaintiffs'] sex traffickers. But they do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures." *Red Roof*, 21 F.4th at 726-27.

Plaintiff separately alleges "a commercial venture that resulted from the business relationship" with Florissant. Compl., ¶ 142(a). At core, however, her underlying complaint remains the same: this venture purportedly rented rooms to traffickers. *Id.* ¶ 142(d).

This venture is also insufficient. To begin, Plaintiff cannot base her participation claim on allegations of the alleged trafficking of others. *See Red Roof*, 21 F.4th at 725 (explaining that the venture must have "violated the TVPRA as to the plaintiff"). More fundamentally, Plaintiff does not plausibly allege that this commercial franchise venture to run a hotel *itself* "engaged in an act"

26

of trafficking though force, fraud, or coercion in violation of § 1591(a). Such an argument is untenable for the reasons Choice identified above.

The Seventh Circuit's decision in *G.G.*, discussing a "commercial" venture is instructive by comparison. *See* 76 F.4th at 548. That case involved the commercial relationship between Salesforce, a software developer, and Backpage, a site that, for years, "had been identified by law enforcement, United States Attorneys General, and every state Governor as the biggest and most notorious sex trafficking and pimping website in the United States." *Id.* at 550. As part of this alleged venture, "'Salesforce sold Backpage targeted solutions addressed to the needs of Backpage's business,' repeatedly assessed Backpage's 'operational needs,' and provided 'active, ongoing support' that was 'tailored' to those needs." *Id.* at 562. Nothing remotely comparable is present here.

### ii.  Choice is Not Vicariously Liable (Count IV).

Plaintiff claims Choice is vicariously liable for Florissant's alleged TVPRA violations. *See* Compl., ¶¶ 144–51. But the TVPRA does not explicitly recognize such claims and Plaintiff fails to plead plausible facts in support.

### 1.  The TVPRA Does Not Recognize Vicarious Liability Claims.

Nothing in the text of the TVPRA explicitly recognizes a vicarious liability claim. *See* 18 U.S.C. § 1595(a). The Supreme Court has cautioned against reading forms of "secondary liability" into federal statutes. *See, e.g.*, *Cent. Bank of Denver,* 511 U.S. at 177, 184.

### 2.  The Complaint Fails to Plausibly Plead that the alleged franchisee is Liable Under the TVPRA.

Plaintiff's theory of vicarious liability also fails because she does not plausibly plead TVPRA claims against Florissant, whether as a perpetrator or participant. *See, e.g.*, *E.S.,* 510 F. Supp. 3d at 428. That failure is dispositive of her vicarious liability claim. *See id.*; *A.B.*, 532 F.

27

Supp. 3d at 1028; *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 940-41 (D. Or. 2020).[8]

### 3.   The Complaint Fails to Allege an Actual Agency Relationship.

Vicarious liability requires plausible allegations of agency in the form of "control over the *actual day-to-day work* occurring at that location." *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624, 650 (E.D. Mich. 2024). That is because "'[a] franchisor must be permitted to retain such control as is necessary to protect and maintain its trademark, trade name and goodwill, without the risk of creating an agency relationship with its franchisees.'" *Walker v. Pacific Pride Serv., Inc*., 341 F. App'x 350, 351-52 (9th Cir. 2009) (citation omitted). Texas law recognizes these considerations in its agency law. *See Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, 643 F. Supp. 2d 883, 889 (S.D. Tex. 2008)

Here, Plaintiff fails to plausibly allege an actual agency relationship between Choice and alleged franchisee, Florissant. Her allegations regarding control amount to nothing more than irrelevant policies wholly unrelated to trafficking designed to protect the brand, much less any trafficking experienced personally by Plaintiff. Compl., ¶¶ 123(b), (c), (f), (j), (n), (s). Other allegations are wholly conclusory and amount to "mere recitations of the requirements for franchisor liability." *Red Roof*, 21 F.4th at 729; *see, e.g.*, Compl., ¶¶ 123(n), (q), (u).

Plaintiff's allegations do not reflect a "right to control the day-to-day operations" of this independently owned and operated hotel. *Red Roof*, 21 F.4th at 729. Instead, they merely relate to

---

[8] Plaintiff has also brought a separate claim brought under 18 U.S.C. § 2255 as her third count. *See* Compl., ¶¶ 1–3 (p. 47) (Plaintiff appears to have misnumbered these paragraphs). It is unclear whether that statute itself creates a cause of action and, even assuming it does, such a claim would only be against the party that engaged in a criminal act of trafficking. *See* 18 U.S.C. § 2255 (plaintiff must be a "victim of a violation of section . . . 1591 . . . ."). Plaintiff has not alleged that Choice violated § 1591 and, moreover, has not plausibly alleged that alleged franchisee Florissant engaged in such a violation.

"a franchisor's control over uniformity and standardization across franchises," which are "insufficient to establish the level of domination that would render a franchisee's independence a fiction." *S.J.*, 473 F. Supp. 3d at 155 (citation and internal quotation marks omitted); *see K.B.*, 2024 WL 4701891, at *4.[9] Rather, "'[t]he clear trend in the case law in other jurisdictions is that the quality and operational standards and inspection rights contained in a franchise agreement *do not* establish a franchisor's control or right of control over the franchisee sufficient to ground a claim for vicarious liability.'" *Allen v. Choice Hotels Int'l, Inc.*, 276 F. App'x 339, 343 (4th Cir. 2008) (emphasis added) (quoting *Kerl v. Dennis Rasmussen, Inc.*, 273 Wis.2d 106, 126 (2004)).

## V.    CONCLUSION

Had Congress intended for § 2255 to allow for recovery against those who violated *civil* statutes, such as § 1595, it could have readily included language to that effect. But it did not. To the extent the Court considers Congressional intent apart from its written edicts, there is no question that Congress has had ample opportunity to clarify the statute's scope—in a manner similar to Plaintiff's pleading efforts—but has not done so. Some iteration of § 2255 has existed since 1998, and it was recently amended in 2022. The TVPRA, meanwhile, has existed in some form or another since 2008. The absence of express statutory text providing for secondary liability cannot now be read into the statute through judicial action. *See Cent. Bank of Denver*, 511 U.S. at 171-91.

Plaintiff can only assert a plausible § 2255 claim against alleged perpetrators of the statutory violations enumerated thereunder. But even if the Court accepts that argument, traditional

---

[9] *See also K.M. v. CPA Hotels of Atlanta, LLC*, No. 1:23-cv-190, 2023 WL 5747490, at *2 (N.D. Ga. Aug. 30, 2023); *H.G.*, 489 F. Supp. 3d at 708-09.

notions of fair play and substantial justice, along with interests of judicial and party economy, demand transfer. Likewise, Plaintiff's chosen forum is far less convenient compared to the sole alleged location with a strong connection to her claims.

For all the foregoing reasons, Choice's Motion to Dismiss should be granted, and all claims asserted against Choice should be dismissed or, in the alternative, transferred to the Eastern District of Missouri.

Respectfully submitted this the 30th day of December, 2025.

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC

By: */s/ Katriel C. Statman*
Katriel C. Statman
SBN: 24093197
1301 McKinney Street, Suite 3700
Houston, Texas 77010
Phone: 713-650-9700
*kstatman@bakerdonelson.com*

Sara M. Turner
(pro hac vice forthcoming)
1901 6th Avenue North
Suite 2600
Phone: (205) 328-0480
*smturner@bakerdonelson.com*

***Counsel for Defendants Choice Hotels
International, Inc. and Choice Hotels
International Services Corp.***

30

**CERTIFICATE OF SERVICE**

I, Katriel C. Statman, certify that on December 30, 2025, I caused the foregoing Motion to Dismiss Complaint to be filed with the Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system.

s/ Katriel C. Statman
Katriel C. Statman